**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE NON-PARTY SUBPOENA TO THE CENTER FOR THE STUDY OF SOCIAL POLICY, | Miscellaneous Case No. _____ |
| Non-Party Movant, | Underlying Litigation: Case No. 6:19-cv-00556-AA (pending in the District of Oregon) |
| WYATT B., *et al.* | |
| Plaintiffs, | |
| v. | |
| KATE BROWN, *et al.*, | |
| Defendants. | |

**NON-PARTY THE CENTER FOR THE STUDY OF SOCIAL POLICY'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA**

Michael J. Anstett (D.C. Bar No. 472177)
Katherine L. St. Romain (D.C. Bar No. 1035008)
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
801 17th Street, N.W.
Washington, D.C. 20006
(202) 639-7000

OF COUNSEL:
Kevin H. Marino
John A. Boyle
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300

*Attorneys for Non-Party Movant*
*The Center for the Study of Social Policy*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

LEGAL ARGUMENT ..................................................................................................... 5

I.   THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT SEEKS
     INFORMATION IRRELEVANT TO THE UNDERLYING LITIGATION AND IS
     UNDULY BURDENSOME TO CSSP. ....................................................................... 6

     A.  The Documents Sought By The Subpoena Are Irrelevant To The
         Underlying Litigation. ..................................................................................... 8

     B.  The Subpoena Is Unduly Burdensome To CSSP. .......................................... 10

II.  THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT SEEKS
     CONFIDENTIAL INFORMATION REGARDING THE PERSONAL
     INFORMATION OF MINOR CHILDREN AND CSSP'S INTERACTIONS WITH
     VARIOUS FEDERAL COURTS. ............................................................................... 13

III. THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT SEEKS
     CONFIDENTIAL BUSINESS INFORMATION OF CSSP. .................................... 15

CONCLUSION ................................................................................................................. 16

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Albany Molecular Research, Inc. v. Schloemer*,
　274 F.R.D. 22 (D.D.C. 2011)..................................................................................... 16

*Alexander v. FBI*,
　186 F.R.D. 21 (D.D.C. 1998)..................................................................................... 15

*Centrix Fin. Liquidating Tr. v. Nat'l Union Int'l Co. of Pittsburgh, P.A.*
　*(In re Centrix Fin., LLC)*,
　Civil Action No. 12-6471 (AET), 2012 U.S. Dist. LEXIS 179131
　(D.N.J. Dec. 18, 2012) ............................................................................................... 6

*Charvat v. Travel Servs.*,
　No. 12 CV 5746, 2015 U.S. Dist. LEXIS 472 (N.D. Ill. Jan. 5, 2015).................... 11

*Cofield v. City of LaGrange*,
　913 F. Supp. 608 (D.D.C. 1996)................................................................................. 7

*Coleman v. District of Columbia*,
　275 F.R.D. 33 (D.D.C. 2011)...................................................................................... 7

*Colonial Bancgroup, Inc. v. Pricewaterhousecoopers Ltd. Liab. P'ship*,
　110 F. Supp. 3d 37 (D.D.C. 2015)............................................................................ 13

*Darling v. Girard*,
　No. 15-mc-499 (BAH), 2015 U.S. Dist. LEXIS 199481
　(D.D.C. July 20, 2015)................................................................................................ 9

*Hancock v. Credit Pros Int'l Corp.*,
　Civil Action No. 2:20-cv-02826-SRC-CLW,
　2021 U.S. Dist. LEXIS 131055 (D.N.J. July 13, 2021)............................................. 8

*Klayman v. Judicial Watch*,
　Civil Action No. 06-670 (CKK)(AK), 2008 U.S. Dist. LEXIS 142879
　(D.D.C. Jan. 8, 2008)................................................................................................ 16

*LaShawn A. et al. v. Bowser et al.*,
　Case No. 1:89-cv-01754 (D.D.C.) ......................................................................... 4, 9

*Millenium TGA, Inc. v. Comcast Cable Comms.*, LLC,
　286 F.R.D. 8 (D.D.C. 2012)....................................................................................... 6

*Moon v. SCP Pool Corp.*,
　232 F.R.D. 633 (C.D. Cal. 2005).............................................................................. 11

*N.C. Right to Life, Inc. v. Leake*,
　231 F.R.D. 49 (D.D.C. 2005)...................................................................................... 6

*Northrop Corp. v. McDonnell Douglas Corp.*,
    751 F.2d 395 (D.C. Cir. 1984) ................................................................................................. 6

*Palmieri v. E. Coast Power & Gas*,
    No. 1:20-cv-02663-RA, 2020 U.S. Dist. LEXIS 203234
    (S.D.N.Y. Oct. 27, 2020) ......................................................................................................... 8

*Phillips & Cohen, LLP v. Thorpe*,
    300 F.R.D. 16 (D.D.C. 2013) ................................................................................................. 7

*Pizana v. SanMedica Int'l, LLC*,
    No. 1:18-cv-00644-DAD-SKO, 2021 U.S. Dist. LEXIS 51419
    (E.D. Cal. Mar. 18, 2021) ................................................................................................. 8, 10

*Puscavage v. Luzerne Cty. Children & Youth Servs.*,
    No. 3:16-CV-35, 2016 U.S. Dist. LEXIS 95304 (M.D. Pa. July 21, 2016) ........................... 14

*Rimsat, Ltd. v. Hilliard*,
    Civil Action Nos. 96-0502, 96-0503 (RCL),
    1997 U.S. Dist. LEXIS 518016 (D.D.C. Apr. 10, 1997) ......................................................... 6

*Walgreens Specialty Pharmacy, LLC v. Atrium Admin. Servs.*,
    Civil Action No. 19-12756 (CCC), 2020 U.S. Dist. LEXIS 189170
    (D.N.J. Oct. 13, 2020) ........................................................................................................... 13

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007) ................................................................................................. 6

*Wyatt B., et al. v. Kate Brown*, et al.,
    Case No. 6:19-cv-00556-AA, (D. Or.) ..................................................................................... 4

*\*Wyoming v. United States Dep't of Agric.*,
    208 F.R.D. 449 (D.D.C. 2002) .......................................................................................... 7, 13

**Rules & Regulations**

Fed. Civ. R. P. 26(b)(1) ................................................................................................................. 7

*Fed. R. Civ. P. 45(d) ......................................................................................................... passim

Pursuant to Federal Rule of Civil Procedure 45(d)(3), non-party The Center for the Study of Social Policy ("CSSP") respectfully submits this memorandum of law in support of its motion (the "Motion") to quash the subpoena (the "Subpoena") issued to it by the defendants in *Wyatt B., et al. v. Kate Brown, et al.*, Case No. 6:19-cv-00556-AA, pending in the United States District Court for the District of Oregon (Eugene Division) (the "Underlying Litigation").[1]

## PRELIMINARY STATEMENT

The issue presented by this Motion is very simple.  CSSP, a non-profit policy organization, was served with a non-party subpoena, commanding compliance in Washington, D.C., by the Defendants in a civil action pending in the District of Oregon regarding the purported deficiencies in the services provided by Oregon's foster care system.  But CSSP has no connection to the Underlying Litigation or to the State of Oregon more generally.  CSSP is not mentioned in the complaint that initiated the Underlying Litigation, and CSSP has done no work for the State of Oregon.  Instead, the Subpoena seeks an enormous swath of documents from CSSP concerning its work—arising from litigations in which CSSP was appointed by a federal district court as a monitor or in some similar capacity—to help reform child welfare systems in other states, each of which implicates its own unique set of facts and legal issues.  The scope of the Subpoena is vast, encompassing essentially every document in CSSP's possession in any way related to its work as third-party monitor of child welfare systems in five states and the District of Columbia over an eleven-year period.

---

[1] Federal Rule of Civil Procedure 45 directs that motions to quash are to be filed in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A) & (B). The Subpoena commands compliance in Washington, D.C., and thus the United States District Court for the District of Columbia is the proper venue for this Motion.

The Subpoena should be quashed for three reasons. *First*, the Subpoena is unduly burdensome within the meaning of Federal Rule of Civil Procedure 45(d) because it seeks documents that are plainly irrelevant to the Underlying Litigation and because compliance with the Subpoena would impose enormous costs on CSSP, a non-party to the Underlying Litigation. By its own terms, the Subpoena seeks documents from CSSP that have nothing to do with the adequacy of services provided by the Oregon foster care system, instead seeking documents about CSSP's work in six other jurisdictions with no connection to the State of Oregon. These documents are utterly irrelevant to the Underlying Litigation, and the Court should quash the Subpoena for that reason alone. But even if the Court were to conclude that these documents had some minimal probative value to any of the issues in the Underlying Litigation, that miniscule probative value is vastly outweighed by the enormous burden the Subpoena imposes on CSSP. The Subpoena seeks virtually every document in CSSP's possession related to its court-appointed work in six jurisdictions over the course of a decade. The cost of collecting, reviewing, and producing this huge volume of documents would be enormous, and greatly outweighs any minor probative value Defendants could derive from these documents that, by their terms, have nothing to do with Oregon or its foster care system. This independently compels the Subpoena to be quashed.

*Second*, by virtue of its role as a third-party, court-appointed monitor in the six federal litigations covered by the Subpoena, CSSP has in its possession (i) a large volume of documents containing sensitive and confidential personal information regarding minor children and (ii) many communications and documents concerning its interactions with the federal judges who appointed CSSP and/or are supervising the federal actions relating to those appointments. CSSP should not be compelled to produce this highly confidential information. But given the huge volume of

documents sought by the Subpoena, the cost of reviewing and redacting all confidential information would multiply the cost of complying with the Subpoena exponentially. This weighs heavily in favor of quashing the Subpoena in its entirety.

*Third*, the Subpoena also seeks confidential business records of CSSP in the form of confidential financial information and records regarding CSSP's proprietary methods and practices. CSSP should not be required to produce this confidential information, especially in light of the minimal probative value offered to any of the issues in the Underlying Litigation.

In short, the Subpoena seeks a broad array of wholly irrelevant and highly confidential information from CSSP, much of which would reveal the personal information of minors and/or others involved with various states' foster-care systems and/or the internal interactions between several federal judges and the third-party entity appointed to implement, monitor or oversee court decrees. Collecting, reviewing, redacting, and producing this huge number of documents would unduly burden CSSP, a non-party to the Underlying Litigation. For these reasons, amplified below, the Court should quash the Subpoena in its entirety.

## FACTUAL BACKGROUND

The facts relevant to this Motion are straightforward. Non-party movant CSSP is a national non-profit headquartered in Washington, D.C. (*See* Declaration of Judith Meltzer ("CSSP Decl.") at ¶ 2.) CSSP's work focuses on reforming child welfare and family support systems through evidence-based practices and policies. (*Id.*) To that end, CSSP works with child welfare systems across the country to help develop more responsive, accountable, and equitable policies that ensure equity, inclusion, and justice for all children, youth, families, and communities. (*Id.*) Over the last ten years, CSSP has been appointed by Federal District Courts to act as a third-party monitor or in a similar capacity to oversee the reform of child welfare systems in five states and the District of Columbia. (*Id*. at ¶ 3.) Among these is a case pending in this Court in which Judge Thomas F.

3

Hogan appointed CSSP as a third-party monitor to oversee the reform of Washington, D.C.'s child welfare system. (*Id.*; *see also LaShawn A. et al. v. Bowser et al.*, Case No. 1:89-cv-01754 (D.D.C.).)

Critically, Oregon is not one of the states where CSSP has been appointed as a third-party monitor. (*Id.* at ¶ 4.) CSSP has never been involved in any litigation in Oregon, regarding Oregon's child welfare system or otherwise. (*Id.*) CSSP has done no work to reform the Oregon child welfare system or any Oregon governmental agencies or services. (*Id.*) Indeed, CSSP has never performed any work for or advised the Oregon government or its Department of Human Services in any capacity. (*Id.*) In short, CSSP has no connection to the State of Oregon or any efforts to reform its child welfare system. (*Id.*)

On July 6, 2021, Defendants served CSSP with a subpoena *duces tecum* in the Underlying Litigation, a lawsuit pending in Oregon. (*See* Ex. A, Subpoena;[2] *see also Wyatt B., et al. v. Kate Brown*, et al., Case No. 6:19-cv-00556-AA, (D. Or.).) Plaintiffs in the Underlying Litigation are individual foster children representing a general class of Oregon foster children, and are represented by the advocacy group A Better Childhood, Inc. (*See* Ex. B, Underlying Litigation Complaint at ¶¶ 17-24; 44.) Defendants in the Underlying Litigation are the Oregon Department of Human Services (the "Oregon DHS"), the Governor of Oregon, the Director of the Oregon DHS, and the Director of Child Welfare for the Oregon DHS. (*Id.* at ¶¶ 25-28.) The Complaint in the Underlying Litigation generally alleges that the Oregon foster care system suffers from various widespread deficiencies and fails to provide the children it serves with adequate care, and seeks declaratory and injunctive relief. (*See generally id.* at ¶¶ 1-16.)

---

[2] Citations to "Ex. __" are references to exhibits to the Declaration of Kevin H. Marino, submitted contemporaneously herewith.

CSSP is not mentioned in the Complaint.  There is no allegation (nor could there be) that CSSP acted as a third-party monitor or in any similar capacity to reform the Oregon child welfare system or otherwise provided any services to the Oregon government or the Oregon DHS.

Notwithstanding CSSP's lack of any connection to the Underlying Litigation or the State of Oregon more generally, the Subpoena propounds ten requests seeking a broad array of documents concerning CSSP's court-appointed work to help reform child welfare systems in other states stemming from other federal litigations, each with its own unique set of facts and legal issues. (*See* Ex. A, Subpoena at Definitions (Defining "Federal Lawsuits" to mean six non-Oregon cases).)  The time-period covered by the Subpoena is vast: eleven years for Request Nos. 1, 2, 4, 5, 6, 7, 8, and 9, and no time limit at all for Request Nos. 3 and 10. (*Id.* at Requests.)  Likewise, the substance of the requests in the Subpoena are expansive.  As detailed below, the Subpoena's requests collectively encompass virtually every document—including communications with the federal judges who appointed CSSP and/or are presiding over the federal actions in which CSSP was appointed—that CSSP has ever created regarding its work as a court-appointed third-party monitor in multiple jurisdictions over the last decade.  (*See* Section I.B., *infra*.)

Given CSSP's total lack of connection to the Underlying Litigation and the massive burden that compliance with the Subpoena would impose on CSSP, CSSP brings this Motion to Quash the Subpoena.  CSSP brings the Motion in this Court pursuant to Federal Rule of Civil Procedure 45(d) because the Subpoena requires compliance in Washington, D.C.  (*See* Ex. A, Subpoena at 1.)

## LEGAL ARGUMENT

Federal Rule of Civil Procedure 45 vests this Court with "the authority to quash a subpoena that compels production of privileged documents or subjects the subpoenaed party to undue burden." *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005).  In determining

"whether to quash or modify a subpoena" under Rule 45, this Court "has broad discretion." *Rimsat, Ltd. v. Hilliard*, Civil Action Nos. 96-0502, 96-0503 (RCL), 1997 U.S. Dist. LEXIS 5180, at *16 (D.D.C. Apr. 10, 1997) (citations omitted); *see also Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984) ("A trial court has broad, but not unlimited, discretion in evaluating the circumstances of a case when considering quashing a subpoena on grounds of oppressiveness."). In determining whether to exercise this discretion, the Court of Appeals for the District of Columbia Circuit "has admonished district courts to be 'generally sensitive to the costs imposed on third parties' when considering a motion to . . . quash[] pursuant to Rule 45, reminding us to consider 'whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Millenium TGA, Inc. v. Comcast Cable Comms.*, LLC, 286 F.R.D. 8, 11 (D.D.C. 2012) (quoting *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007)); *see also Centrix Fin. Liquidating Tr. v. Nat'l Union Int'l Co. of Pittsburgh, P.A. (In re Centrix Fin., LLC)*, Civil Action No. 12-6471 (AET), 2012 U.S. Dist. LEXIS 179131, at *16 (D.N.J. Dec. 18, 2012) ("A non-party [] is afforded greater protection from discovery than a normal party."). Here, for the reasons discussed below, this Court should exercise its discretion to quash the Subpoena in its entirety pursuant to Rule 45.

## I. THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT SEEKS INFORMATION IRRELEVANT TO THE UNDERLYING LITIGATION AND IS UNDULY BURDENSOME TO CSSP.

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) provides that "the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." As this Court has noted, "[t]he text of Rule 45 makes quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena." *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013) (internal citations and quotations omitted). Rule 45 thus "requires that district courts consider a

6

number of factors potentially relevant to the question of undue burden, among them: whether the discovery is unreasonably cumulative or duplicative; whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; and whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id*. In addition, "[n]on-party status is one of the factors the court uses in weighing the burden of imposing discovery." *Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 452-53 (D.D.C. 2002).

Moreover, while "[n]o requirement of relevance is included in the text of Rule 45[,] … it is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil Procedure." *Coleman v. District of Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011). Thus, "[a] federal court has the authority to quash a subpoena that seeks material which is clearly irrelevant." *Cofield v. City of LaGrange*, 913 F. Supp. 608, 614 (D.D.C. 1996). Moreover, "[c]ourts have routinely held that it is a generally accepted rule that standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Pizana v. SanMedica Int'l, LLC*, No. 1:18-cv-00644-DAD-SKO, 2021 U.S. Dist. LEXIS 51419, at *5-6 (E.D. Cal. Mar. 18, 2021) (internal citations and quotations omitted); *see also Hancock v. Credit Pros Int'l Corp.*, Civil Action No. 2:20-cv-02826-SRC-CLW, 2021 U.S. Dist. LEXIS 131055, at *21 n.16 (D.N.J. July 13, 2021) ("the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery") (internal quotations omitted); *Palmieri v. E. Coast Power & Gas*, No. 1:20-cv-02663-RA, 2020 U.S. Dist. LEXIS 203234, at *5 (S.D.N.Y. Oct. 27, 2020) ("non-party discovery require[s] a stronger showing of relevance than for party discovery") (internal citations omitted).

Applying these standards, the Subpoena plainly presents an undue burden to CSSP within the meaning of Rule 45 and therefore should be quashed.

A.     **The Documents Sought By The Subpoena Are Irrelevant To The Underlying Litigation.**

Most critically, the documents sought by the Subpoena are irrelevant to the claims and defenses in the Underlying Litigation.  The Complaint primarily concerns the Oregon DHS and its alleged failure to provide adequate services to the children it serves in Oregon.  (*See* Ex. B, Complaint at ¶¶ 1-16.)  CSSP has no relationship with the Oregon DHS.  (*See* CSSP Decl. at ¶ 2.)  CSSP has never acted as a monitor for the Oregon DHS, has done no work for that agency, and has not advised that agency in any capacity.  (*Id.*)  Indeed, beyond having done no work for the Oregon Department of Human Services, CSSP has done no work for *any* agency of the Oregon state government, as a third-party monitor or otherwise.  (*Id.*)  Nor does the Complaint allege (nor could it) that CSSP's work somehow indirectly impacted the adequacy of services provided by Oregon DHS.  In short, CSSP has no connection whatsoever to the Underlying Litigation.

Putting aside CSSP's general lack of connection with the Underlying Litigation, the State of Oregon, or the Oregon DHS, the specific requests in the Subpoena themselves make clear that Defendants are engaged in a fishing expedition for irrelevant documents entirely disconnected from the claims or defenses at issue in the Underlying Litigation.  Specifically, the Subpoena seeks documents regarding CSSP's work to improve and monitor child welfare systems in numerous different states over the course of more than a decade.  (*See generally* Ex. A, Subpoena at Request Nos. 1-7.)  But Oregon is not one of those states, and the Oregon DHS is not one of the agencies for which CSSP has acted as monitor over the last decade.  Instead, the Subpoena seeks documents regarding CSSP's work as a monitor of *other* child welfare agencies in *other* states, including a proceeding pending in this District.  (*Id.* at Attachment A, Definitions (defining "Federal

8

Lawsuits" to include five state lawsuits and *LaShawn A. et al. v. Bowser et al.*, Case No. 1:89-cv-01754 (D.D.C.).)  These documents are simply not relevant to any of the claims or defenses in the Underlying Litigation, which is entirely focused on the adequacy of services provided in Oregon. The Subpoena should be quashed for that reason alone.  *See Darling v. Girard*, No. 15-mc-499 (BAH), 2015 U.S. Dist. LEXIS 199481, at *19-20 (D.D.C. July 20, 2015) ("These requests do not appear to have anything to do with the claims in the underlying action brought under the CPI and the ACPA, and the Court will not condone such requests"); *Phillips & Cohen, LLP*, 300 F.R.D. at 18 (quashing non-party subpoena that "seek[s] documents which are of no conceivable relevance in the context of the action now pending in the District of Massachusetts").

Viewed in the light most favorable to Defendants, the Subpoena seeks documents from CSSP concerning a subject—the services provided by other state child welfare agencies—vaguely similar to that raised in the Underlying Litigation.   Such a tangential and amorphous connection in subject matter is plainly insufficient to establish relevancy, especially given that the documents sought by the Subpoena, by its own terms, concern unrelated proceedings in different jurisdictions with different parties addressing their own distinct set of legal and factual issues.  *See Wyoming*, 208 F.R.D. at 454 (quashing subpoena that went "beyond seeking information about the non-party witnesses' contacts with the government [a party to the underlying litigation] since they seek internal communications and strategic communications on policy issues with other environmental advocacy groups").

Were it otherwise, discovery would be nearly limitless.  By way of example, parties in insurance coverage litigation would be able to subpoena non-party insurance companies regarding similar claims to provide a baseline against which to compare their counterparties' handling of the claims at issue.  Similarly, litigants in suits regarding the adequacy of corporate policies would be

9

able to subpoena non-party corporations for information regarding similar policies to provide a comparator for the policies at issue. This is not the law. Rather, "[c]ourts have routinely held that it is a generally accepted rule that standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Pizana*, 2021 U.S. Dist. LEXIS 51419, at *5-6 (internal citations and quotations omitted). Defendants cannot make *any* showing of relevance here, much less a "stronger showing," and the Court should quash the Subpoena for that reason.[3]

   **B.     The Subpoena Is Unduly Burdensome To CSSP.**

   Even if the documents sought by the Subpoena were in some way tangentially relevant to the Underlying Litigation (and they are not), that minimal probative value is vastly outweighed by the extreme burden to which the Subpoena subjects CSSP, a non-party. First, the Subpoena covers an enormous time-period and thus imposes a massive burden on CSSP. Specifically, Request Nos. 1, 2, 4, 5, 6, 7, 8, and 9 all seek documents dating back to 2010, a time-period of more than a decade. (Ex. A, Subpoena at Requests.) And Request Nos. 3 and 10 have no time limitation whatsoever. (*Id.*) This expansive time-period weighs heavily in favor of quashing the subpoena. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quashing subpoena because the "requests are overbroad on their face and exceed the bounds of fair discovery in that they seek [] information over a ten year or greater period") (internal citations and quotations omitted).

   Second, the subject matter covered by the requests in the Subpoena is overbroad and imposes an undue burden on CSSP. Request No. 1, by definition, seeks documents that are

---

[3] Although CSSP's counsel would typically attempt to negotiate a narrower scope of a third-party subpoena, all of the materials sought by the Subpoena here are entirely irrelevant to the Underlying Litigation and producing any of them would impose an enormous burden on CSSP and risk disclosure of confidential material. As a result, the Subpoena cannot be narrowed to an acceptable scope and must be quashed in its entirety. CSSP asked Defendants' counsel to withdraw the Subpoena, but they declined to do so. This motion follows.

available publicly.  Specifically, that request calls for CSSP to produce "All Documents You **Published** since 2010 related to Your Approaches and Policies, including Child Welfare Systems affected by Legal Disputes and the Federal Lawsuits."  (Ex. A, Subpoena at Request No. 1 (emphasis added).)  "Published" documents are in turn defined as those "intended to be accessible to the public (even if at a cost)."  (*Id.* at Definitions.)  CSSP should not be compelled to collect, review, and produce documents that are already, by definition, available to Plaintiffs and the broader public.  *See Charvat v. Travel Servs.*, No. 12 CV 5746, 2015 U.S. Dist. LEXIS 472, at *4 (N.D. Ill. Jan. 5, 2015) ("Because the requested information is available from public sources, the Subpoena imposes an undue burden on nonparty AB Data Group."); *Centrix Fin. Liquidating Tr.*, 2012 U.S. Dist. LEXIS 179131, at *20 (quashing subpoena that "compels Everest to identify and produce information which is largely already available to AIG").

The remaining requests in the Subpoena are equally problematic because they seek documents regarding a huge swath of topics implicating virtually all of CSSP's work to improve child welfare agencies over the last decade. Specifically, the Subpoena seeks documents regarding "Work Plans, written reports or Published Documents" (Request No. 2); "the success or failure of any Legal Dispute in improving a Child Welfare System" (Request No. 3); "written proposals, promotional materials, pitches, resumes, websites, brochures or presentations" related to CSSP's qualifications to serve as a third party neutral (Request No. 4); "Training You provided to Your personnel or third parties involved in reviewing case files or individuals or families served by Child Welfare Systems" (Request No. 5); the "Methods and Standards utilized" by CSSP as a third-party neutral (Request No. 6); CSSP's fees and rates (Request No. 7); and all documents related to two advocacy groups (neither a party to the Underlying Litigation), A Better Childhood,

Inc. and Children's Rights, Inc. (Request Nos. 8 and 9).[4]  These requests are so broad as to encompass essentially any document or communication CSSP has ever created—including communications with the federal courts that appointed CSSP—in the course of its role as a monitor of child welfare systems across numerous different states over the course of more than a decade.

The burden imposed on CSSP to collect, review, and produce this huge swath of documents would be enormous.  As an initial matter, the sheer volume of documents is likely to be vast given that the Subpoena seeks essentially every document CSSP has ever created in its role as monitor of child welfare systems across multiple states over the course of more than a decade.  Collecting, reviewing, and producing these documents would be an extremely costly undertaking.  (*See* CSSP Decl. at ¶ 5.)  These costs would be compounded by the fact that, as discussed below, the Subpoena's requests implicate documents containing sensitive personal information regarding minor children.  (*Id.*; *see also* Section II, *infra*.)  All of this information would have to be redacted before CSSP could produce any documents pursuant to the Subpoena.

Given the volume of documents implicated, the cost of combing through these documents to identify and redact any and all sensitive information regarding minor children is likely to be enormous.  (*See* CSSP Decl. at ¶ 5.)  The great burden this would impose on CSSP vastly outweighs any miniscule probative value Plaintiffs could derive from these documents (which, as discussed above, are entirely irrelevant to the Underlying Litigation).  The Court should quash the Subpoena for that reason.  *See Colonial Bancgroup, Inc. v. PricewaterhouseCoopers Ltd. Liab. P'ship*, 110 F. Supp. 3d 37, 43 (D.D.C. 2015) ("Given the attenuated relevance of any non-public

---

[4] Request No. 10, seeking "All Communications between You and anyone about the [Underlying Litigation]," is at least somewhat more narrowly tailored than the other requests in the Subpoena. But it should still be quashed because, as discussed above, CSSP has no connection to the Underlying Litigation, and any communications it may have had regarding the Underlying Litigation are not relevant.

Interagency Policy Statement documents, and the burden in producing them, OCC's Motion to Quash Requests 10-12 is granted.").  The burden imposed by the Subpoena is especially acute in light of the fact that CSSP is a non-party with no connection to the Underlying Litigation whatsoever.  *See Wyoming*, 208 F.R.D. at 452 ("Non-party status is one of the factors the court uses in weighing the burden of imposing discovery."); *see also Walgreens Specialty Pharmacy, LLC v. Atrium Admin. Servs.*, Civil Action No. 19-12756 (CCC), 2020 U.S. Dist. LEXIS 189170, at *7-8 (D.N.J. Oct. 13, 2020) ("a nonparty to an action is afforded greater protection from discovery than a normal party") (internal quotations and citations omitted).

## II.  THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT SEEKS CONFIDENTIAL INFORMATION REGARDING THE PERSONAL INFORMATION OF MINOR CHILDREN AND CSSP'S INTERACTIONS WITH VARIOUS FEDERAL COURTS.

Federal Rule of Civil Procedure 45(d)(3)(A)(iii) provides that "the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Courts recognize that "that the privacy interests of [] minors are [of] paramount concern" and that the "potential results of revelation of sensitive information about dependent minors [is] sufficient to impose restrictions on the release of such information."  *Puscavage v. Luzerne Cty. Children & Youth Servs.*, No. 3:16-CV-35, 2016 U.S. Dist. LEXIS 95304, at *11-12 (M.D. Pa. July 21, 2016) (granting protective order to keep confidential personal information of minor children).

Here, CSSP acted as a court-appointed monitor of child welfare systems in five states and the District of Columbia over the 11-year period covered by the Subpoena and, as a result, has in its possession an enormous volume of reports, communications, and other documents implicating the confidential information of individual minor children.  (*See* CSSP Decl. at ¶ 5.)  The Subpoena plainly requests documents that would require disclosure of this confidential information.  For

13

instance, the Subpoena seeks documents such as "work plans, written reports, or Published documents since 2010 related to Your experience as a Third-Party Neutral for Legal Disputes involving Child Welfare Systems" (Request No. 2); documents regarding "the success or failure of any legal Dispute in improving a Child Welfare System" (Request No. 3); and documents regarding CSSP's "Methods and standards utilized in Your Roles as Third-Party Neutrals concerning legal Disputes involving Child Welfare Systems" (Request No. 6). These requests are likely to implicate confidential information regarding minor children served by the various child welfare systems for which CSSP acted as monitor over the last decade. (*See* CSSP Decl. at ¶ 5.)

Were it compelled to produce records in response to the Subpoena, CSSP would attempt to redact personal information of minor children from such records. But doing so would be extremely burdensome given the sheer breadth of documents sought. (*See* CSSP Decl. at ¶ 5.) Moreover, given the large volume of documents implicated by the Subpoena, even with diligent effort, there is still a risk that confidential information regarding minor children could be disclosed inadvertently. (*Id.*) Especially in light of the fact that these records have no relevance to the Underlying Litigation, the burden on CSSP in redacting information of minor children and the risks of inadvertent disclosure weigh heavily in favor of quashing the Subpoena. *See Alexander v. FBI*, 186 F.R.D. 21, 54 (D.D.C. 1998) (noting that "[t]he power to subpoena a non-party is not without limit" and quashing subpoena that sought confidential and privileged documents).

Further, during its lengthy tenure as a court-appointed monitor in connection with six separate federal civil actions, CSSP has of course had innumerable communications with and concerning the federal judges who appointed it and/or are overseeing the subject federal actions. (*See* CSSP Decl. at ¶ 5.) Many of the Subpoena's requests would require production of CSSP non-public internal communications with those federal courts. For example, Request Nos. 2, 3 and 6

seek various documents—including "Work Plans," written reports and "Methods and Standards"—concerning CSSP's involvement in "Legal Disputes" regarding the "Child Welfare Systems" for which it serves as a court-appointed monitor or "Third-Party Neutral."  Request No. 4 seeks presentations and other materials regarding CSSP's "qualifications or abilities" to serve as a monitor or neutral.  And Request No. 5 seeks all documents related to the training of CSSP personnel and third parties regarding the review of case files for the children and families served by the Child Welfare Systems for which CSSP is a monitor.  These Requests impermissibly delve into private communications and interactions between federal courts and an entity appointed to carry out directives and orders of those courts.  The Court should not permit Defendants to intrude on such internal communications, particularly since they have no relevance to the Underlying Litigation.

## III.  THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT SEEKS CONFIDENTIAL BUSINESS INFORMATION OF CSSP.

Federal Rule of Civil Procedure 45(d)(3)(B)(i) provides that "the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." "The decision to quash a subpoena because it seeks trade secrets or other confidential information is left to the discretion of the court resolving the discovery dispute." *Klayman v. Judicial Watch*, Civil Action No. 06-670 (CKK)(AK), 2008 U.S. Dist. LEXIS 142879, at *9 (D.D.C. Jan. 8, 2008). To determine "whether information is protected under Rule 45, courts must evaluate whether the information being sought is the type of commercial information that should not be disclosed to the public." *Albany Molecular Research, Inc. v. Schloemer*, 274 F.R.D. 22, 25 (D.D.C. 2011). Information that should not be disclosed includes information that "would unfairly harm the disclosing party's ability to compete in the marketplace." *Id.*

Here, the Subpoena seeks confidential business information of CSSP, including information regarding "Work Plans [or] written reports" (Request No. 2); "the success or failure of any Legal Dispute in improving a Child Welfare System" (Request No. 3); "Training You provided to Your personnel or third parties involved in reviewing case files or individuals or families served by Child Welfare Systems" (Request No. 5); and the "Methods and Standards utilized" by CSSP as a third-party neutral (Request No. 6). CSSP's work plans, its training documents, and its methods and standards are all proprietary information regarding CSSP's expertise in monitoring and advising child welfare agencies across the country. (*See* CSSP Decl. at ¶ 6.) CSSP developed these plans and methods over the course of the last decade at great expense, and it strives to keep that proprietary information confidential. (*Id.*)

Moreover, the Subpoena also seeks documents concerning CSSP's fees and rates (Request No. 7) and any financial interest with two entities, A Better Childhood, Inc. and Children's Rights, Inc. (Request No. 8). This confidential financial information is not public and has no relevance to the Underlying Litigation.

Especially in light of the complete irrelevance any of this information has to the Underlying Litigation, the Court should exercise its discretion and quash the Subpoena on the grounds that it seeks confidential and proprietary business information from CSSP. *See* Fed. R. Civ. Pr. 45(d)(3)(B)(i).

## **CONCLUSION**

For the foregoing reasons, the Court should enter an order pursuant to Federal Rule of Civil Procedure 45 quashing the Subpoena.

Dated: August 4, 2021                                          Respectfully submitted,
      Washington, D.C.

                                                        By:     /s/ *Michael J. Anstett*_____
                                                             Michael J. Anstett (D.C. Bar No. 472177)

16

Katherine L. St. Romain (D.C. Bar No. 1035008)
**FRIED, FRANK, HARRIS, SHRIVER**
   **& JACOBSON LLP**
801 17th Street, N.W.
Washington, D.C. 20006
(202) 639-7000

OF COUNSEL:
Kevin H. Marino
John A. Boyle
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300

*Attorneys for Non-Party Movant*
*The Center for the Study of Social Policy*

17